## DODGE v. FOWLER.

PATENTS; INTERFERENCES; PRACTICE; NON-PATENTABILITY; LACHES; EXCUSABLE DELAY; PRIORITY.

1. Where each party to an interference attacks the invention of the other as impracticable and therefore devoid of patentable novelty, *held* that that is a question which this court can not consider in an interference proceeding. That there may be extreme cases in which it would be proper in interference proceedings to raise and determine the question of the patentability of the device in controversy may be conceded, but ordinarily no such question can arise in this court in such proceedings.
2. Where it is claimed that an alleged invention is wanting in patentability or wanting in identity with a rival applicant's device, *held* that the proper course to pursue is to move for a dissolution of the interference. The motion can not be made in this court, and except, perhaps, in very extraordinary cases no such question can properly be raised in or considered by this court. This must be regarded both as good practice and well-settled law.
3. Although F. was the first to conceive, D. was the first to reduce to practice, and as F. did not use due diligence in perfecting the invention, *held* that D. should be awarded priority.
4. Where the testimony showed that F.'s delay was occasioned only by the fact that some one to whom he had made application refused or declined at the time to construct a machine for him, *held* that if such a cause were allowed to excuse total inaction in regard to the invention and the discarding of it for the time

for other and more immediately profitable enterprises, it is difficult to see why inaction might not be justified forever and all rival inventors effectually barred out of the field of invention.

5. Although priority of invention is awarded to D. over F., yet it is not to be understood by the decision in awarding priority to D. that he is entitled to a patent for his invention, for from the statements of the Commissioner and the Board of Examiners the inference to be drawn would seem to be that D.'s device is found to be wanting in patentability and therefore that the declaration of interference was based upon mistake or inadvertence.

6. While no motion was made by F. to dissolve the interference, yet if under the law and the rules of the Patent Office it is not improper after adjudication of priority of invention to refuse a patent to the successful party in the interference proceedings upon the grounds that have first been developed in those proceedings or upon grounds manifested at any time after the declaration of interference the court in its decision on priority is not to be understood as precluding such action by the Office.

No. 78. Patent Appeals. Submitted November 11, 1897. Decided December 8, 1897.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding. *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. Philip T. Dodge* and *Mr. Robert F. Rogers* for the appellant.

*Mr. George W. Rea* and *Mr. Albert H. Norris* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in a case of interference in linotype machines for printing.

The issue in controversy is defined by the officials of the Patent Office as follows:

"The combination in an organized machine for producing type-bars from impressed lines of matrices, of a magazine having separate cells for circulating type-plates, a carrier or holder having a line-assembling channel or space,

key mechanism for individually releasing the circulating type-plates from the magazine-cells, a carrier or holder for matrix material, means for causing the line of type-plates to indent the matrix material to form a line of matrices, casting mechanism for casting a type-bar from the said matrices, and mechanism in operative connection with the line-assembling channel or space for removing the type-plates therefrom and returning them to their proper cells in the magazine."

This machine thus described is of the same general type of line-casting machines devised by Mergenthaler and others in which an impression is made upon a matrix by means of a male or cameo type, the slug or linotype being cast from such matrix. But this is claimed to be an improvement upon the Mergenthaler machine in this, that to the system of circulating the male or cameo type, adopted from the Mergenthaler machine, there is added a holder or carrier for the matrix material and means for causing the assembled line of male type to indent the matrix material and for casting a slug from such matrix, all in the same machine.

The appellee, Joseph C. Fowler, in his preliminary statement, claims to have conceived the invention in controversy in the summer of 1888; to have disclosed it to others in the same year, again in 1889, and again in April or May of 1893; to have demonstrated its practicability in 1889 by setting up ordinary type and impressing a lead plate by rolling the type into the plate; to have commenced illustrative drawings of the device in June of 1893, and the drawings for his application in August of 1893, and to have commenced the construction of a working machine in August of 1893, which he completed in November or December of the same year, and to have completed another machine for commercial use in May, 1894. This statement he amended afterward by alleging that his conception of the invention was in the summer of 1887, and that in December

of 1891 he made drawings and commenced the construction of a machine, which he finished in February of 1892; also that his first disclosure of the invention to others was in August of 1887.

The appellant, Philip T. Dodge, in his preliminary statement says that he conceived the invention in July or August of 1890; that he communicated it to others about the same time; that he made sketches of it between that time and the first of December of the same year, and also during the summer months of the year 1891; that no working machine was ever made, and that the machine has never been in public use.

Dodge was the first to file his application for a patent, which he did on June 29, 1893. Fowler's application was filed on October 21, 1893, and his later date places upon him the burden of proof.

Voluminous testimony was taken by both parties, and upon that testimony the Examiner of Interferences adjudged priority of invention to Dodge. On appeal this decision was reversed by the Board of Examiners-in-Chief, and the decision of the Board of Examiners was sustained by the Commissioner of Patents. Appeal is now taken to this court from the decision of the Commissioner of Patents.

1. It is to be noted that each party attacks the invention of the other as impracticable, and therefore as devoid of patentable novelty; but that is a question which we can not consider here. That there may be extreme cases in which it would be proper in interference proceedings to raise and determine the question of the patentability of the device in controversy, may be conceded; but ordinarily no such question can arise in this court in such proceedings. A *prima facie* determination of the patentability of the alleged invention, and the practical identity of the devices of the rival applicants, are necessary prerequisites for a declaration of interference; and if either of these is deemed to be wanting, or is found in the course of the interference

proceedings in the Patent Office to be wanting, the proper course, as stated by the Examiner of Interferences, in his opinion rendered in this case, is to move for a dissolution of the interference. The motion can not be made in this court; and, except perhaps in very extraordinary cases, no such question can properly be raised here or considered by us. This we must regard both as good practice and well-settled law. *Hisey* v. *Peters*, 6 App. D. C. 68.

All the tribunals of the Patent Office find the claim of the appellee, Fowler, as the first to have conception of the invention in controversy, to be sufficiently and satisfactorily established by the proof in the case, and we concur with them in that regard. In view of their unanimity on this point, it would seem to be useless to analyze the testimony that bears upon it. It is clear to us that if Fowler had the invention at all, he had it prior to his rival. The appellant, Dodge, therefore must be regarded as the junior in conception. And it is conceded that he never reduced the invention to actual practice, and that he never in fact did anything more than make some sketches in illustration of it. But as he was the first to file his application for a patent, and is thereby entitled to the advantage of being regarded as having reduced it to constructive practice, the burden of proof is upon the contestant Fowler to show that at the time of such application, he (Fowler) was in the exercise of due diligence in the prosecution of his invention. And after all, notwithstanding the voluminous record before us, it is to this question of due diligence on the part of Fowler that the controversy between the parties appears to have been narrowed. It was upon this question that the decisions of the tribunals of the Patent Office were made to turn, and it is upon the determination of this question that our decision must be made to depend.

It does not appear that much, if anything, was done by Fowler between 1888 and December of 1892. There seems to have been desultory attempts made by him to interest

Mr. L. G. Hine, the predecessor of Mr. Dodge in the presi-
dency of the Mergenthaler Company, in his invention, but
with no definite result. In the meantime, Fowler, who was
apparently a prolific inventor, busied himself with other
schemes and devices, among them a line-casting machine of
the type of the Mergenthaler invention, to which he pro-
fesses to regard the indenting device, here in issue, as greatly
superior. But in December of 1892 he succeeded to some
extent in interesting Hine in his device, and he then exhi-
bited to him a drawing, which is claimed to show the
invention, or some parts of it, in an improved shape; and
it is claimed that other drawings were made in the course
of the first half of the year 1893. But the only testimony
to these is that of Fowler himself. Hine, however, again
put him off, and urged him to finish certain other work for
another company in which they seem both to have been
interested. At last, in August of 1893, Fowler returned to
his indenting-machine and to his solicitation of Hine, and
told the latter that if he (Hine) would not build it, some one
else would be procured to do so. Fowler then succeeded in
some way in procuring a machine to be constructed which
embodied his device, and afterward, on account of some
structural weakness in this first construction, he had a
second one made, which is alleged to have worked success-
fully. All this activity, however, was after Dodge had
entered the field of invention and had actually filed in the
Patent Office the application from which the present pro-
ceedings have resulted.

To Dodge must be assigned the second conception, but
priority in reduction to practice, since under the law and
the authorities he is entitled by his application, treated as
an allowable application, to the benefit of a constructive
reduction to practice. It is true that it is held by the
Commissioner of Patents, that he is not entitled to the bene-
fit of such reduction to practice, because it has been shown
that his device, or a machine constructed according to his

device, is inoperative. But, as we have already intimated, that raises a question which we can not consider here. We must regard him as having constructively reduced the invention to practice before Fowler filed his application in the Patent office.

Now this constructive reduction to practice is entitled to the date of June 29, 1893, the date of the filing of the application; and we fail to find in the record any sufficient evidence whatever that Fowler did anything in the way of a reduction to practice before August, 1893. We can not assume that his solicitation of Hine, in December of 1892, was any such manifestation of activity and due diligence as he law requires; and his production at that time of a new sketch, which, according to his own claim, was no more than a mere variation of his original conception in 1887, can not be regarded as evidence of diligence. Even if this second sketch should be regarded as proof of a new or second conception at that time, it was not followed up in such a way as to cut out another inventor who appeared in the field soon afterward, and promptly followed up his conception of the invention with an application for a patent. In fact, it was not followed up at all but practically discarded for another pursuit. Assuming that he made other sketches in the meantime, which can not be taken as proved, mere persistence in the making of sketches, when the device or invention has already been sufficiently illustrated in sketches and sufficiently explained to other persons, can not be regarded as diligent prosecution of an invention.

It is claimed that Fowler is or was a comparatively poor man; that the machines required to be constructed were costly; and that he had to rely upon his interesting others in his device to procure its actual reduction to practice. But apart from the fact that there is no good reason shown why he could not have done, at any time prior to August of 1893, what he proceeded to accomplish at that time, the plain answer to this contention is, that he could have done at any

time what Dodge did—that is, he could have filed his application in the Patent Office, and thereby fully protected himself. In failing to do so, he took upon himself the risk that other inventors might enter the field and gain an advantage over him by greater diligence.

It is true that in the case of *Yates* v. *Huson*, 8 App. D. C. 93, this court said that "the law tolerates at least, if it does not encourage, delay on the part of inventors, in order that they may perfect their inventions and obtain reasonable evidence of their merits;" and it discouraged the practice of crowding the Patent Office with hasty, crude, and incomplete devices. But there is no claim here on the part of Fowler that his invention was incomplete, or that his delay was occasioned by any desire or purpose to perfect it. According to his own testimony, the delay was occasioned only by the fact that some one to whom he had made application refused or declined at the time to construct a machine for him. But if such a cause were allowed to excuse total inaction in regard to the invention, and the discarding of it for the time for other and more immediately profitably enterprises, it is difficult to see why inaction might not be justified forever, and all rival inventors effectually barred out of the field of invention.

Assuming, therefore, that Fowler had the invention in question in 1887 or 1888; that he then made sketches of it and communicated it to others, but that he did nothing further with it before August of 1893, beyond the making of some additional sketches and repeated solicitations to another person to construct a machine for him, which, however, do not seem to have amounted to more than mere solicitation; and assuming also, which we must assume for the present purpose, that Dodge conceived substantially the same invention in 1890 or 1891, or even in the early part of 1893, and that in June of 1893 he followed up his conception with an application in due form for a patent, accompanied by appropriate sketches and drawings, upon which

his application was adjudged to be an allowable one, and his device to be a patentable invention constructively then reduced to practice by him, we can not hold that there was due diligence on the part of Fowler which would preclude Dodge from having the benefit of the earlier application.

Entertaining this view of the question of due diligence as presented to us in this case, we feel constrained to reverse the decision of the Commissioner of Patents, and to award priority of invention to the appellant, Philip T. Dodge.

But there is a consideration in the case which we can not ignore, although we have specifically excluded it from any influence in our determination of the question of due diligence, which we have regarded as the only question before us in this interference. The Commissioner of Patents, in his opinion, says that "the specification and drawings in the application of Dodge are insufficient to enable one skilled in the art, without other aids, to construct an operative line-casting machine of the indenting type called for by this issue."

And the board of examiners expressed the same idea even more positively. They said: "These objections are apparently valid, and create a serious doubt whether it would not require much experiment, if not invention, to complete and perfect the Dodge machine."

We do not desire it to be understood by our decision that Dodge is entitled to a patent for his alleged invention. What we decide is simply that, assuming that Fowler and Dodge have made the same invention independently of each other, and that Dodge has been the first to reduce it to constructive practice by his first application for a patent, we think the question of due diligence should be settled in his favor as against Fowler. From the statements of the Commissioner and the board of examiners, the inference to be drawn would seem to be that Dodge's device is found to be wanting in patentability, and therefore that the declaration

of interference was based upon mistake or inadvertence. It is true that no motion was made on behalf of Fowler to dissolve the interference; but if, under the law and the rules of the Patent Office, it is not improper, after adjudication of priority of invention, to refuse a patent to the successful party in the interference proceedings upon grounds that have first been developed in those proceedings, or upon grounds manifested at any time after the declaration of interference, we are not to be understood by this decision as precluding such action by the Office.

*This opinion and the proceedings in the cause will be certified by the clerk to the Commissioner of Patents, according to law.*